UNITED STATES DISTRICT COURT FOR THE DISTRICT
OF NEW HAMPSHIRE

U.S DISTRICT COURT
DISTRICT N.H
FILED

2010 JAN -6 A 10: 56

<u>Cheryl Barnette, et al</u>

v.                          Civil No. 09-cv-264-PB

<u>Stephanie and Gary Pickering</u>

### CHERYL BARNETTE'S OBJECTION TO REPORT AND RECOMMENDATION FOR DISMISSAL

1. I, Cheryl Barnette, inadvertently failed to include in my initial complaint to the court alleging violations of the Fair Housing Act, 42 U.S.C. a copy of my original HUD complaint, which did indeed specify racial and familial discrimination.

2. It should also be noted that I suffer from a disability of depression, and I do contend that they knew about this disability because I paid my rent with my Social Security Disability checks.

3. Also, at the time of eviction, I was suffering from an ankle that had been broken on both sides, and received surgery, furthermore disabling me and causing me considerable pain and further diminished the capacity for the healing process. Much physical pain and emotional pain was had.

4. The Pickerings constantly referred to my children and their friends derogatorily as "gangs". The children were the ages of 7-12 years of age, all males, and all either black or Hispanic.

5. The Pickerings at one time retained possession of a piece of exercise equipment called a "Bowflex" which was a costly machine after our eviction. While I was residing in a homeless shelter in Plymouth, NH, and I had filed small claims against them there, they told the judge in the Plymouth District Court in NH that they had gotten rid of it because it was broken. The machine in fact had never been broken, as I bought the machine new, and I had never even used the machine because I broke my ankle a couple of weeks after I had the bought machine. I believe they in fact sold it, and I am still left paying for something I do not have. The machine was valued at $5,000, and was also to be used in my convalescing to speed the recovery after my accident.

6. The belief held is that I should be compensated for my exercise machine, which defendants lied upon oath to a judge in Plymouth NH claiming it was broken, when Michael Cummings, a former resident, had went to the premises to retrieve possessions he had left in the basement, and saw the exercise machine still left in our former residence with the present occupants.

7. The defendants left us without safe accommodations through trickery and deceit by telling me that she would call off the eviction with a handshake, as witnessed by my youngest son, as long as I paid the amount past due which was a small amount of $750. That amount I had left to my roommate to pay, who at the time was my boyfriend and had never before paid his half of the rent, and I was insistent that this time around, he would be held accountable.

8. Through their trickery and deceit, they have caused much emotional harm on my children and me, for we had to sleep in our automobile and were

traumatized by the events unforeseen in that situation. The YWCA, which helps with homeless women and children, was filled to capacity, and we couldn't find shelter in Manchester, so we slept in our car for one week near the city hospital, CMC.

9. Gary Pickering informed me to my face that the neighborhood was all enacting to sign a petition to force me and my children out of the neighborhood. I have no witness to that, but I do mention in several pieces of correspondence to the Pickerings in handwritten letters to them, which they had "donated" my belongings from a storage unit in Manchester, NH to a Goodwill store. They donated all of our earthly possessions, your honor, to a Goodwill store, or so they say. Expensive textbooks as I was studying to be a paralegal at the time, computers, antiques, so many other personal things that could never be replaced. I believe one of the motivating factors was to get rid of handwritten evidence in our correspondence that would prove Gary Pickering had stated the neighbors wanted to sign a petition to remove us.

10. An example of the trickery and deceit the landlords would go through: One particular time they called the police on my roommate. As I was on crutches, and yelling at Gary Pickering for his foul mouth at one time, he beckoned for the officers to come over as I was assaulting him with my crutches. My youngest son, Tirel, who was nine years old at the time, is a witness also to that event, unfortunately. I never even attempted to hit him with my crutches, and who would do such a thing, as there were uniformed officers there at the time?

## CONCLUSION

I am seeking relief under the court to not have this case dismissed, but re-examined. The Pickerings should not be allowed to engage in such behavior, which I believe is discriminatory in all manner. I believe my family was targeted to be removed from the premises because they were young black males, and they posed a threat to the neighbor next door, who Gary had given them his telephone number to, so the spying neighbors could report on the "wrong" things we were doing.

The only wrongs were my children being born black males, and having a number of male Hispanic friends.

*Cheryl Barnette*
PO Box 516
Ashland NH 03217
603 536 3308
cell# 603 677 6851

1-5-10